Case number 19-1298. Gun Owners of America Inc at all versus William P Barr at all. Arguments not to exceed 15 minutes per side. Mr. Olson, you may proceed for the appellants. Good morning and may it please the court. Rob Olson on behalf of the appellants. I'd like to save three minutes for rebuttal if I could. The court is here to decide whether bump stocks are machine guns under federal law. I have a hypothetical since we've had about 400 pages of briefing. I was trying to think of what I could tell the panel that hadn't already read. So the court is here to decide whether the district court erred in not entering a preliminary injunction. And that goes to the merits of the issue your honor is whether the likelihood of success that we brought that these are not machine guns. If you take an AR-15 a semi-automatic rifle to the range and an M-16 a fully automatic rifle to the range everyone knows is a machine gun and the AR-15 is fitted with a bump stock and you take both of those guns put them on separate tables and you lock them down in a vice and you go to the M-16 and you zip tie the trigger to the rear. That gun will start firing bang bang bang bang bang and it will continue to fire until the ammunition is exhausted or it malfunctions the shooter can walk away. If you do the same thing on the AR-15 with the bump stock attached you zip tie the trigger to the rear that gun will go bang one round. Now that shows two things it shows that that gun is not firing automatically like the M-16 that you have to have the shooter there doing something more than just articulate. I was going to ask both sides if it was factually undisputed that forward pressure on the front end of the gun is necessary such that if all I was doing was putting my finger here and I wasn't doing anything with this hand would it continue to fire or would it just fire once? That's the point with the bump stock it wouldn't fire at all because that forward pressure is necessary because the trigger finger is not even resting on the trigger initially it's resting on the extension ledge through the trigger guard so that forward pressure is necessary to even break the pressure. Does your elbow move or is it just constant like forward pressure? It's it's not a constant forward pressure your honor. We call it a human compression spring in our briefing that you are absorbing the recoil energy and then retransmitting forward pressure between each shot that that trigger is resetting and is actually coming off of the trigger there's a physical separation between the trigger and the finger in between each and every shot. That's the recoil of the gun though. The recoil is driving right it's not the bump stock causing either one the bump stock is simply along for the ride it's just a piece of plastic that's reciprocated. Is it your view on this point too with the Atkins accelerator would we have to create a circuit split with the 11 circuit in addition to the DC circuit or do you think the Atkins accelerator is distinguishable from a bump stock without the spring? It's And how is that on would it be distinguishable on the text of just automatically is that how you would? I would I would say that that there's a good argument that the Atkins accelerator operates automatically because that recoil spring is harnessing recoil energy and is retransmitting it forward the same function that the shooters performing here. I would I would still argue it's not necessary for this case it doesn't require a circuit split but I would argue that the Atkins accelerator is still not functioning with a single function of the trigger every time a round is shot out of the with the Atkins accelerator the trigger breaks to the rear and resets forward and as the government points out in their response to the petition in Gouda's in DC in subjects a little bit and I was curious on I assume I assume you think that we can or the government can forfeit Chevron what would you say if the government said we don't think that we need to rely on a Supreme Court case so a binding Supreme Court decision on us and the government it's helpful to the government and the government just doesn't like the reasoning of the case can they can they waive binding Supreme Court precedent can they waive Chevron binding so I'm making a hypo yeah so your point is that they can waive Chevron and it's kind of a interpretive gloss on all statutes can they can they waive a Supreme Court case as well can they waive dictionary definitions that we use if so answer that question can they waive a Supreme Court precedent or us relying on a dictionary definition to interpret a phrase I don't believe there so why is that different than Chevron I don't believe there is a Supreme Court precedent that says that the government has to apply Chevron in every case even when the government disc expressly disclaimed it like is in this case I don't think Chevron applies here I don't think the statute is ambiguous to begin with I don't and I don't think that if even if there is for the sake of argument and ambiguity in the statute I don't think it's one that the agency can fill not every ambiguity is something that the agency can step in and and gap filled there has to be some sort of delegation of authority to the agency there it has to be clear enough that this is the type of thing that Congress wanted them to be weighing in on what the statute means and the DC court they gave two or three cases of other decisions where there had been a clear delegation and I would actually defer to the government's response to that petition because they go through those cases and they see in each one of those cases there were and I have them here granted the SEC the authority to by rules and regulations to find what the prohibited conduct was another one was any the crime was knowingly violating any regulation issued under the statute and the third one was similar here we don't have anything like that it says ATF gets to take the statute and further define what it means to be machine and tell us what devices are not the generic though the generic ATF can pass regulations to implement the statute to enforce the statute is what one of the and that's a law enforcement term in a criminal context that that this statute is clear his criminal statutes are supposed to be clear and if everybody knows what this means you are to enforce it and it's that's the kind of thing like if if dealers are supposed to keep records and they say you have to keep names and addresses and heights and weights or whatever it is to fulfill that statute but to come in and say we think a bump stock is a machine gun well that's that's great the agency certainly entitled to that opinion they can issue a opinion letter which they do when manufacturers submit samples for classification and they can have their opinion but to say that then you can't go to a court and have the court apply the statute is another thing entirely what about the apparent view of the new view of the Supreme Court that Chevron deference really isn't even an item in the criminal context well there's certainly the April and Bramski cases your honor I believe that's what you're referring to the district court below that was one of the errors many of the errors of the district court were and things that the court did not address and that was one of them there's no discussion of April or Bramski just straight to Chevron the DC circuit they judge Henderson dissented and and pointed out that they use this Babbitt case from 1995 a footnote and they said well we have to apply Chevron and judge Henderson says wait a second we've got cases from 2014 you just run roughshod right over those to Babbitt and I think there's more recent pronouncements that make it very clear that there's no Supreme Court's position that they have never applied this kind of deference in the criminal context which I think that's wrong I think they have but that they've changed their minds on that if that is the current position of the Supreme Court why why would we even be worrying about the waiver issue what would you be worrying about the waiver issue whether whether Chevron can be deference can be waived I mean if this is a context in which the Supreme Court is going to say we don't apply it anyway then why would we be concerned about whether it was waived there are alternative arguments John I'm giving the court many reasons why not to apply Chevron here certainly we don't think Chevron applies in the criminal context that judges have to decide what criminal laws mean if we have this law that was enacted in 1934 and everybody for 80 plus years has supposedly known exactly what it means and courts have relied on it to convict numerous defendants of possession of machine guns and now suddenly this new technology throws the entire statute into disarray that's not how ambiguity works your honor so if that's the case then Congress needs to go back to the drawing board but it's not the job of the ATF and it's not the job even of courts to go back to 1934 and say we have a new technology let's divine the presumed intent of Congress if they had had seen this device and what they what we think they would have have done with it that's just not the way so can I ask you just getting back to the plaintext of the statute like the most compelling point from the government I thought was the idea that even machine guns don't fire automatically because you have to put continued pressure on the trigger it's only one pole but it's continued pressure and if you let go it'll stop firing so why isn't that like how do you machine gun which has continued some input from the human as compared to the machine from that case from this case why isn't why isn't just you know a traditional machine gun you have to use some manual pressure why isn't that like a bump stock because that's the input that the statute allows for is the simplest answer the statute the district court pulled automatically out of the statute and said what does this word mean in a vacuum but that's not how we interpret statutes we interpret interpret them in the context of the other words in the statute the statute says it operates automatically by a single function of the trigger so that's what you were talking about is the pressure on the trigger that's the single function of the trigger that causes it to then operate automatically it doesn't cause a bump stock to do that and that is the starting and ending point of how much human input is permitted on a machine gun and that's it goes back to the hypothetical you do with a bump stock sets him herself up and applies pressure and the apparatus of the gun continues right no not if you if the other hand pushes the gun keeps the gun in that forward position the gun keeps firing right there's no apparatus in a bump stock it's just a piece of plastic that slides back and forth that that bump stock has to be pulled tight to the shoulder the gun has to be continuously applied pressure forward and the trigger has to be maintained on the extension ledge so that the trigger can bounce on and off that extension ledge enables the shooter to have the gun produce rapid fire it is it assists by one pull one shooter pull of the trigger right this the shooters is maintaining his finger on that extension ledge the it's gun forward that causes the trigger to slide forward and that's correct the shoot the shooter is not pulling pulling pulling pulling pulling it's the extension ledge that enables that to happen right there is pushing pushing pushing pushing pushing which is six and one half a dozen the other sort of it you're on a bump stocks do not enable bump fire you can bump fire people can do it in in midair they just hold the rifle stock away from their shoulder and are able to bump fire the gun and have the trigger reciprocate they do it with hooking their thumb through their belt loop and are able to accomplish the same thing so if there's there's no mechanism in a bump stock that allows it to be something special bump firing with a bump stock that you can't do without a bump stock in ten different ways that people have been doing for a hundred years the only thing that a bump stock does is it allows you to triangulate your arm your shoulder and the stock so that your finger can stay in that fixed three-dimensional space as opposed to bouncing around in midair as you're trying to do this freehand it makes it easier it doesn't change anything it doesn't add or subtract anything from bump fire any other way can I just turn to the remedy quickly it was unclear are you are you seeking a universal invalidation of the regulation are you seeking what is colloquially known as a nationwide injunction your honor the APA is actually all of the district courts have been criticized around the country for issuing nationwide injunctions the APA is actually the one place that nationwide injunctions are supposed to be issued we are asking for an invalidation so why what is the side the statute there are no further questions thank you good morning your honors may it please the court Brent Hinchwood for the government you keep your voice up please yes your honor the rule at issue in this case sets out the correct understanding of the statutory terms automatically and single function of the trigger and correctly applies those terms to determine that bump stocks are prohibited machine guns under federal law as ATF and the courts have long recognized the term single function the trigger refers to how the shooter initiates the firing sequence which is ordinarily by a pull on the trigger and the term automatically is correctly understood to mean quote as the result of a self-acting or self-regulating mechanism as dictionary definitions and judicial interpretations of that term confirm and a rifle equipped with a bump stock is a trigger once and produce an automatic cycle of continuous fire until the shooter releases his pole malfunction do you dispute the factual contention from the other side to my first question about whether if you do you have to have that continued forward pressure and if you release that continued forward pressure with a gun continue to firing there's no dispute about that in this case and the rule is explicit it would not continue right the rule is explicit that what has to happen is there has to be pressure on the front of you know for stock or barrel shroud of the weapon in conjunction with the shooter main so what's the difference between pulling the trigger this way and pulling the trigger this way your each one could be seen as a separate pull of the trigger you know it's what you've done is you've set up a continuous cycle and what you've done is you've by pulling the trigger once you've initiated that cycle by having their initial round of recoil and you've maintained that pressure effectively aren't you effectively continuing pulling the trigger each time when you when you put the continued forward pressure on the front end of the gun well you know two separate things here so part of it is what type what what statutory term we're talking about here when we are talking about that particular question so I take plaintiff's argument here to be that somehow because the trigger is being touched each time to enable each bullet to fire these weapons don't fire by a single function of the trigger and I don't think that's I'll even accept your definition that it has to be I just don't whether it's a single pull of the trigger or a single push of the trigger because you're actually pushing the gun forward into your finger it still seems to me I mean you yourself concede you wrote the regulation broader because you were worried about you know you that the types of cases where you push down on a button and then the gun somewhere else starts triggering that it's not just a pull that it also covers like other types of ways to implement the trigger and here it seems to me all you're doing is you're pushing the gun forward each time and each push even under your view of what a single pull of the trigger means is a separate and concrete thing and so it's not automatically so I guess it's automatically that's doing the work there okay so just a step back I take plaintiff's argument here to be the term automatically isn't doing any separate work in the statute but to the extent what you're suggesting is that the process is not automatic because the shooter has to maintain pressure I mean we know that can't be right because that's a feature of virtually every weapon that people would plainly agree or machine gun yeah but at least I agree that that was a compelling response but that leads to only one pull or push of the trigger whereas with the bump stock the pressure leads to several each one is a implementation of the trigger during a contact with the trigger but this is where you get into your question about whether that that reading would conflict with the 11th Circus decision in Aikens because in Aikens it's the same thing is true the trigger separates from the finger each time and you know has to come back up and make contact and the 11th Circuit squarely rejected automatically because there's a spring that's actually doing the work and so that's closer to the just pushing it down and it'll continue to fire versus here what's doing the work is the forward arm we don't dispute we certainly agree that the Aikens accelerator operates automatically but if the automatically right so to the extent I think it's important to go back to the definition that's laid out in the rule that was you know used in dictionaries at the time of the enactment of the NFA in 1934 adopted by the 7th Circuit and Olofson that what you're looking at is whether it's you know a self regulating cycle and that's exactly what you have with a bump stop where you have an individual pulls the trigger and by maintaining that forward pressure rather than maintaining pressure on the trigger itself they're able to maintain that cycle and that's the whole reason your honor that just to complete the thought to one of your earlier questions that's the reason why in the zip tie example my colleague gave the reason that the gun doesn't continue to cycle with the zip tie is that of course there's you don't have the conditions necessary for the weapon to fire automatically all the shooter does is it you know he applies he pulls the trigger and provides those conditions and the gun just goes and that's the point but it doesn't just go because doesn't if he didn't if he everybody agrees that there would the gun would stop right if he took away the conditions that enable the weapon to operate that way then yes the conditions are not automatic because the conditions are the manual condition of me continuing to put pressure on the forward part of the gun but your honor once you've set those conditions then it is operating automatically once those conditions are set the point is not that the weapon has to operate fully independent of the shooters input I mean look at the weapon at issue in this decision in Carter I mean there you know the individual the expert in that case testified that the way he fired the weapon automatically was actually holding the magazine in pulling the bolt back and releasing it and then the gun you know fired three times but he had to do more than one thing to make that happen and of course what you know that's a machine gun we don't have to reach some of the plaintiffs channel the criminal defendants challenges in that case because the weapon is a machine gun so how do you distinguish bump-firing so why so you you in your in in the regulation you expressly say that bump-firing is not covered by the machine gun and so I assume that it's based on it's not automatic but it really is the same concept as far as I could tell it's just the one channels the recoil in a way that the other one does not right you know why does that matter why does that factual distinction matter well because of the definition of the term automatically what the bump does is it performs that task that the shooter would otherwise have to do for him or herself and you know the rule explains in detail when you are bump firing you're sort of you're doing all of that work and even if you're using a belt loop or something like that the shooter has to manually do all the steps that a bump stock does and that's why a bump stock is fundamentally different bump stock does is just oh it channels the recoil in a way that the expert has to channel learn to do by himself and so you think that automatically channeling the recoil is analogous to automatically shooting more than one trigger do you see what I'm saying that what I think the bump stock does is it helps channel the recoil into a back-and-forth motion where the shooter who's bump shooting kind of has to do that on his own so that's so you think that that that automatic but automatically doesn't modify channel the modifies the verb shoot and it seems to me in both situations you could say that if you if you interpret automatically the way you do that a gun is shooting automatically more than one trigger pull no I mean I don't think that's right your honor because you know what the shooter has to do in that context is to do the sort of the back-and-forth that's required to do sort of the technique of bump firing but of course the statute doesn't ban techniques it bans devices that you know are specifically designed to convert weapons into machine guns and that's exactly what a bump stock is in this particular context and so you know the rule explains why you know fundamentally that's a different type of thing the fact that you know a user has to put in additional inputs to make a device work doesn't take it out of the meaning of automatic or automatically and and you know I think there's any number of examples in ordinary English where we talk about things being automatic or functioning automatically even though you the user has to continue to place some amount of input into the machine the point is that it relieves the you know the person of a substantial part of the task are you if I understand you correctly you you are disavowing any reliance on Chevron right your honor we haven't relied on Chevron here and to get to some questions that were asked earlier you know the the point here is that what the agency has done is it has provided its interpretation of the public and so in announcing that interpretation well wait a minute are you saying that these rules are interpretive not legislative and therefore Chevron doesn't apply I'm entered correct your honor so that that's one reason why Chevron doesn't apply in this so you're taking the position that was rejected by the DC Circuit that these are interpretive rules yes your honor but everything that was done until the litigation signaled that they were legislative rules I don't think that's right your honor I mean I think if you look at the text of the rule particularly in some places the DC Circuit does not address it makes very clear that you know the core distinction between an interpretive rule and a legislative rule is that a legislative rule speaks with the force and effect of law right that the sort of underlying statute that's not what's happening here in three different places where the rule is talking about you know why are we doing this what are our alternatives are we making a policy judgment the rule specifically says the agency doesn't have a choice because the statute compels the conclusion that these are machine guns and we have to regulate them so 66 before your honor the agency well I mean there's a history with respect to bump stock devices so obviously the first one the agency encounter was the Aikens accelerator in 2002 which it originally erroneously determined was not a machine gun and then when they reviewed the device four years later realized in fact the weapon did function as a machine gun I mean there you know you'll recall the weapon was advertised as firing something like 650 rounds a minute and they realized you know if you pull the trigger once and the weapon is going to fire continuously again even though there's some separation between the trigger and the finger between each bullet that that wasn't relevant agency has been making a lot of mistakes over the last 10 years on the meaning of the statute why doesn't the agency's own shifting positions suggest that the rule of lenity should apply because the agency itself doesn't understand the scope of this task statute until just recently how is it that the average citizen supposed to know the scope of the statute well two points your honor first the agency has in countering these new devices has had to sit down and think hard about how the statute applies to them but that doesn't mean that the rule of lenity kicks in and in fact the Supreme Court cases that address the rule of lenity and in particular in the firearms context I mean Abramski for example has said you know look the rule of lenity doesn't apply here and you know not only that we don't defer to the government's previous narrow interpretation of the criminal statute issue that in fact we're going to give you the correct reading of the statute and that even if there are some degree of ambiguity which I'm certainly not saying there is we don't agree that that that it's ambiguous in this respect but even if there were some degree of ambiguity that wouldn't trigger the rule of lenity so you know to the extent you have concerns about the rule of lenity we don't think those are implicated here where knowledge is you know there's certainly no grievous ambiguity but we also think that there is at least the government's shifting position is some evidence that this statute is subject to some reasonable debate on the interpretation I mean even within the agency but that's specifically what the Supreme Court rejected in Abramski when it said look the dissent says this this statute is subject to a reasonable narrower reading and that may be true but that doesn't implicate the rule of lenity and it doesn't matter for our interpretation of the correct terms of the statute so you know in this particular context you know we don't think it makes the slightest bit of what you should be looking at here is how does the rule correct interpret the statutory terms and does it correctly apply those terms to the devices at issue and with respect to that we don't think there's any doubt when you actually run through the analysis that these devices are covered by the statute and to close the loop judge white on your question the three places I was going to point out in the rule where it talks about this page 66 520 529 and 5 can you say that again absolutely 66 520 where it talks about State Farm and it addresses comments specifically asking about saying we support this rule as a policy matter 66 529 where it addresses comments saying as a policy matter we disagree with this rule and then 66 535 where it talks about alternatives to regulatory action and the rule says well we don't have alternatives because Congress has been machine guns and we can't unban them that's not how this works can I ask a question that's just kind of a the meaning of the statute as it's changed over time I didn't so apparently when it was first enacted in the 1930s it said automatically or semi-automatically what does it even mean to say semi-automatically and then also have the back end shoot more than one shot with one function of the trigger how could that isn't that like an oxymoron how could it be semi-automatic and shoot more than one function of the trigger just if you know right yeah I'm not sure exactly what Congress meant to cover you know with respect to that part of the definition it may have been sort of a belt and suspenders type of approach but what we do know is that in 1968 when Congress amended the statute and brought it into substantially its present form it said automatically and then it added all the material about parts which is exactly what we have here so look if you can convert a weapon into one that fires automatically more than one shot by a single function of the trigger you know then that is going to be a machine gun and that's exactly what these devices yeah that's another question I had for you why wouldn't if your argument is correct why wouldn't all AR 15s be illegal because they could be readily restored to shoot under your definition automatically more than one shot because all you have to do is put a restored to shoot I think it would have to turn on exactly what I mean certainly there times where a weapon is transferred in a state where it can be sort of readily restored to shoot by usually it's sort of bending breaking things of that nature I mean this court actually I believe in one TRW model rifle it's a forfeiture case sort of address the readily restored definition but you know so you don't fact that like the fact that a semi-automatic weapon you can add parts to it and make it a machine gun no one has ever thought that that meant all semi-automatic weapons are machine guns because it's always been true that you could add parts to a weapon independent of a bump stock parts that everyone would agree would make it a machine gun and convert a semi-automatic weapon into a machine gun but no one's ever thought that possession of an AR 15 is a federal crime I mean your honor no under the statute the statutory question would be the same so you know I don't see how you would read the statute to say that a weapon that is not modified in any way to fire as a machine gun is a machine gun that's can be doesn't say or has been says or can be readily restored what your honor again the readily restored definition you know we haven't briefed that question in this case and I understand that but I guess what's really troubling me is you know what would prevent you from deciding tomorrow that that's that you're going to read that differently from how you read what bump stocks are for a very long time your honor two points one the whether or not the statute covers a particular device is a question of statutory interpretation and there's no indication that anybody thinks that all semi-automatic firearms are somehow machine guns because you might be able to add parts to them you know what's the machine gun here is actually under the statute the bump stock itself not the weapon the bump stock because the definition machine gun includes parts that convert the weapon into a machine gun the bump stock is the machine gun for purposes of the statute and to your other point about you know how the agency's treated it over time of course the agency's interpretation the term single function of the trigger has been the same since 2006 when it reclassified the Aikens accelerator the only thing that's different here at all is its interpretation of the term automatically which I mean I'm not sure I follow exactly what the concern is from plaintiffs with that term but it adopted the definitions that were you know present at night in 1934 when the statute was enacted and then adopted by the Seventh Circuit and all of them just a couple of things briefly judge Murphy you had mentioned something about bump stocks perhaps channeling recoil energy and I just wanted to refer you to our brief where we do discuss that we don't even think bump stocks channel energy recoil is already going this way the shooters pressure is already going this way bump stocks don't change anything about that they just allow you to fix your trigger finger in three-dimensional space but even if bump stocks channel energy we go all the way back to the final rule the bump that the recoil energy and immediately we point out no they don't harness recoil energy and they say okay final they assist the shooter in harnessing recoil energy we said no they don't do that either and they say okay we admit that the shooter is the primary one that harnesses recoil energy but they help the shooter channel energy and we're I mean we're so far afield from where the final rule started that they don't really they I think they've even abandoned almost the argument that bump stocks harness recoil energy because they there's nothing kind of commonsensical that they do because as at least as I understand it that there's the thing right there so it can only go back and forth rather than if you have it out like this having a turn doesn't that suggest that there's at least some type of making the momentum go in a straight line versus potentially any which way unless the shooter controls the way it's going to recoil physics of the of the bullet going off the recoil goes certainly opposite direction and if you're pushing the gun forward it's going in that direction certainly there's no by the shooter that would cause that wobble that the bump stock might help to stabilize but I don't think that that it means it's channeling the recoil energy is the point the other thing that I wanted to cover you had had some concerns about a nationwide injunction and I certainly understand concerns like that I would say that this case if this court were to invalidate the final rule I don't think that is the end of the story for bump stocks we have had members many members of Congress I believe on stock legislation has already been introduced there have been the most anti-gun members of Congress on television saying they don't think the statute covers bump stocks and Congress needs to do something about it so certainly this is something that is going to continue to be debated we have any cases from our circuit in which we've interpreted the APA the way you do you have did you cite any cases suggesting that we think that it's appropriate to grant a nationwide injunction for a rule like this in fairness it wasn't really all that much briefed but certainly this is something that is going to continue to percolate in an American government but just on the equities why would we think that it's appropriate to grant a nationwide injunction when we would have to be taken a position that's opposite the DC circuit I've never heard of injunction in a case like this just being granted for a particular circuit if the final rule is invalid then then the ATF would be well now we're just like in the word off the likelihood of success on the merits and we're just in the equitable preliminary injunction factors seems to me that one factor we could consider is how other courts have handled this as well as which factor as the interest of the government yeah there's public interest well if this court disagrees with the DC circuit then there's already a circuit split I don't know that it's in the public interest to have this court declare that bump stocks are not machine guns but we're not going to take the steps necessary to tell the ATF they can't enforce this well yeah I mean you're talking a lot about the law and how it's our job to say what the law is but it's also our job only to decide concrete cases and you're requesting an injunction that would apply to a lot of parties who are not before us well the traditional understanding of the judiciary is not to grant relief to parties who are not before the court well we are certainly here representing gun owners of America which has members nationwide and like I said I don't see how this court would final rule and an order and an order that ATF could not enforce it I don't know how that would look you just can't enforce it and the Sixth Circuit I guess I but I don't know that there's any precedent for that your honor but like you said it wasn't it wasn't briefed so thank you all case to be